IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-00458-RJC
(3:09-cr-00189-RJC-DCK-2)

| | |
|---|---|
| SILAS JUNIOR MOBLEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on consideration of Petitioner's pro se Motion to Vacate, Set Aside or Correct Sentence, which he filed pursuant to 28 U.S.C. § 2255, and Respondent's opposition to Petitioner's claims for collateral relief. For the reasons that follow, Petitioner's § 2255 Motion to Vacate will be dismissed.

I. BACKGROUND

Petitioner, Jeremy Williams, and Petitioner's son, Marvin Suntate Mobley, were indicted in this District on one count of possession with intent to distribute at least five (5) kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count One). The conspiracy was alleged to have commenced as early as 2004, and continued until October 20, 2009. The indictment also alleged that from on or about June 1, 2009, Petitioner and his son were guilty of attempted possession of cocaine with intent to distribute at least five hundred (500) grams of cocaine and aiding and abetting the same, all in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846 and 18 U.S.C. § 2 (Count

1

Three). (Criminal Case No. 3:09-cr-00189, Doc. No. 1: Bill of Indictment).

During Petitioner's initial appearance on the indictment, Respondent informed the court that it would file notice of its intention to seek enhanced penalties pursuant to 21 U.S.C. § 851, and the court then advised Petitioner about the significance of the § 851 notice, and he acknowledged that he understood that if he was convicted he faced a mandatory minimum term of 20-years and a maximum term of life. See 21 U.S.C. § 841(b)(1)(B)(2006). Prior to arraignment, Respondent filed the § 851 notice identifying a 1991 conviction in Pickens, South Carolina, for trafficking marijuana for which Petitioner was sentenced to a four-year term of imprisonment. (Id., Doc. No. 14: Section 851 Notice; Doc. No. 109: Presentence Report (PSR) ¶ 38).

During arraignment, while represented by Lawrence Hewitt, Petitioner entered a not guilty plea and waived formal reading of the indictment. In moving for detention, the Government called Agent James Bryant from Immigration and Customs Enforcement (ICE) and he provided significant details about Petitioner's drug dealing activities and that of his co-defendant and son, Marvin Mobley.[1] After hearing from the parties, the court ordered Petitioner detained. (Id., Doc. No. 19: Order of Detention).

Roughly two months after arraignment, Mr. Hewitt filed a motion to withdraw citing irreconcilable differences which had led to a complete breakdown in the attorney-client relationship. (Id., Doc. No. 27). Petitioner filed a pro se motion to disqualify Mr. Hewitt accusing him of ineffective assistance and of being a "tortfeasor in conspiracy

---

[1] The information regarding Agent Bryant's testimony was accessed from the digital recording of the arraignment and detention hearing before U.S. Magistrate Judge David Kessler.

2

with the prosecutor to cause intentional injuries." (Id., Doc. No. 28). The court relieved Mr. Hewitt from further responsibility and appointed Richard Culler.

Petitioner later entered into a written plea agreement with the assistance of Mr. Culler in which he agreed to plead guilty to the drug distribution conspiracy charged in Count One in his indictment and he acknowledged that the amount of cocaine that was known or reasonably foreseeable to him in the drug conspiracy was at least 15 but less than 50 kilograms, subjecting Petitioner to a base offense level of 34 under U.S. Sentencing Guidelines Manual (USSG) § 2D1.1(c)(1). In exchange for Petitioner's guilty plea, the Government agreed to dismiss Count Three at sentencing.

The agreement also informed Petitioner that he faced no less than 20 years nor more than life if he had a prior drug conviction, and that he was subject to a mandatory term of life if convicted after sustaining two or more felony drug convictions. (Id., Doc. No. 64: Plea Agreement ¶ 4). The agreement referenced the § 851 notice that was already on file; noted the 20-year minimum term Petitioner faced; and provided that Respondent agreed that if Petitioner complied with each of the terms of his plea agreement that the § 851 notice would be withdrawn, leaving Petitioner facing a term of no less than 10-years' imprisonment. (Id.). Petitioner, Mr. Culler and Respondent signed the plea agreement and the matter was calendared for a Plea and Rule 11 hearing.

After addressing Petitioner during the beginning of the Rule 11 hearing, the court continued the case after Petitioner made it clear that he had reservations about entering into the plea agreement and that he may wish to enter a straight-up plea. Mr. Culler explained that if he chose to do that then Petitioner would lose the benefit of the dismissal

of Count Three and would therefore be entering guilty pleas to Counts One and Three. (Id., Doc. No. 152: Tr. of Rule 11 Hearing, July 27, 2010). The Rule 11 hearing reconvened two days later. The court noted at the outset that the case was likely set for trial within a week or so and then recessed the hearing to allow Petitioner and Mr. Culler to continue discussions regarding Petitioner's decision to plead guilty pursuant to the terms of the plea agreement. After speaking with Mr. Culler privately, Petitioner informed the court that he did not intend to plead guilty under the terms of the plea agreement and that he no longer desired for Mr. Culler to represent him. (Id., Doc. No. 153: Tr. of Rule 11 Hearing, July 29, 2010).

Mr. Culler then filed a motion to withdraw which came on for hearing the next day. In the motion, Mr. Culler explained that Petitioner had decided not to plead guilty pursuant to the plea agreement, and had instead determined that he could present a meritorious defense to the drug charges by employing provisions of the Uniform Commercial Code (UCC). Mr. Culler stated that he tried to dissuade Petitioner from relying on the UCC, explaining this code had no impact on a federal drug conspiracy case. Mr. Culler found that based on Petitioner's insistence that he control his defense against the express advice of counsel, that he would need to withdraw because further representation seemed impossible. (Id., Doc. No. 72: Motion to Withdraw).

After hearing from Mr. Culler, the court excused the Respondent and held an ex parte hearing on the motion to withdraw with only Mr. Culler and Petitioner present. Mr. Culler explained that he had received discovery from the Government in the last few weeks which included tape recordings of conversations between Petitioner and his son

4

Marvin Mobley. Mr. Culler shared the substance of the transcripts from some of these conversations and Petitioner then expressed his intention to go forward with the plea agreement. Mr. Culler informed Petitioner that if he signed the plea agreement and pleaded guilty that he may well have to testify against his at son at his trial. Petitioner evinced his understanding and signed the plea agreement and Mr. Culler scheduled the Rule 11 hearing with the Clerk's office. During their next meeting, Petitioner again expressed his intention to be bound by the plea agreement and that as a consequence he may have to testify against his son. At the reconvened Rule 11 hearing, Petitioner was carrying papers that related to the UCC which Petitioner believed could serve as a complete defense to his federal drug charges. Mr. Culler repeatedly tried to counsel Petitioner that the UCC provided absolutely no defense to his pending charges, but Petitioner remained resolute in his belief that the UCC could present him with a defense, and he stated that he would ignore counsel's advice. In a detailed order, the court found that Mr. Culler's motion to withdraw should be denied and the case proceeded to trial. (Id., Doc. No. 74: Order; Doc. No. 183: Sealed Ex Parte Tr.).[2]

With Mr. Culler continuing as trial counsel and Petitioner and Marvin Mobley were tried together before a jury. The evidence presented by the Government provided, in pertinent part, that FBI agents in Charlotte received information that Carlton Ruffin had

---

[2] After the motion to withdraw was denied, Respondent filed an amended § 851 notice which included Petitioner's 1991 South Carolina marijuana trafficking conviction, and a 1991 conviction which was sustained in North Carolina in Mecklenburg County Superior Court for the possession with intent to sell and deliver cocaine, for which Petitioner was sentenced to a term of 4-years in prison. (Id., Doc. No. 83: Amended Section 851 Notice; PSR ¶ 39).

5

been involved in a large-scale conspiracy to traffic cocaine and cocaine base from a Mexican source since 2004. One of the participants in the conspiracy, Darryl Harrison, was detained by ICE agents on May 28, 2009, in connection with the possession of fifteen kilograms of cocaine. Harrison quickly agreed to cooperate and he detailed cocaine deals that he had conducted with Petitioner that included deals involving several kilograms of cocaine and marijuana.

In particular, Harrison informed agents that Petitioner called him on May 28, 2009, to set up the purchase of cocaine. The drug buy was arranged for June 1 with Petitioner agreeing to buy one kilogram of cocaine from Harrison for $30,000. The parties agreed to meet at a Cracker Barrel restaurant in Charlotte, but later changed the location to a nearby Burger King. Case agents observed Petitioner and Marvin Mobley drive to the Burger King to meet Harrison. Upon meeting with Petitioner and Marvin, Harrison explained that he had been unable to contact his cocaine supplier and Petitioner agreed to meet up with Harrison later in the day. Meanwhile, agents followed Petitioner and Marvin Mobley after they left the parking lot and noticed the vehicle's license plate was expired and agents conducted a stop of the vehicle.

Agents employed a K-9 officer to conduct an open-air sniff of the vehicle and the dog alerted to the rear of the vehicle. Officers asked the Mobleys if there was any contraband in the vehicle and Marvin admitted there was money under the driver's seat. Upon examining the contents of the bag, officers noticed the smell of cocaine and determined there was $30,500 in cash on hand. Petitioner and Marvin were released after the cash was seized.

On July 2, 2009, agents interviewed a co-conspirator, Kenneth Patterson, who informed them that he began conducting cocaine transactions with Petitioner in 2003 or 2004 and that these transactions continued until April or May 2009. In all, Patterson described ten to twelve transactions that involved the purchase of cocaine and marijuana and involved tens of thousands of dollars and multiple kilograms of drugs. Harrison's principle drug source, Moices Valencia, was also interviewed by agents and he described several cocaine purchases made by Petitioner totaling nearly $100,000. Following a two-day trial, Petitioner and Marvin Mobley were convicted on Counts One and Three in their indictment.

In Petitioner's PSR, the probation officer found a total offense level of 34 pursuant to USSG § 2D1.1 based on the amount of drugs for which Petitioner was found to be responsible and criminal history category of I. Based on Petitioner's drug convictions which were noticed by Respondent prior to trial, Petitioner faced a mandatory minimum term of life imprisonment. (PSR ¶¶ 64-65). During sentencing, the Court adopted the PSR without change and sentenced Petitioner to life imprisonment on Count One and a concurrent term of 120 months on Count Three. (Id., Doc. No. 130: Judgment; Doc. No. 131: Statement of Reasons).

On appeal, Petitioner challenged the jury instructions on the issue of drug quantity citing United States v. Collins, 415 F.3d 304, 311-15 (4th Cir. 2005). The Court rejected this argument after first noting that Petitioner did not raise this challenge during trial, thus appellate review was for plain error. The Court then concluded there was no "error—plain or otherwise—under Collins because the court's instructions directed the jury to

7

determine the drug quantity reasonably foreseeable to [Petitioner] and Marvin individually, as opposed to the conspiracy as a whole." Petitioner's judgment was affirmed on appeal. See United States v. Mobley, 482 F. App'x 766, 768 (4th Cir. 2012).

In this collateral proceeding, Petitioner raises claims of ineffective assistance of counsel which will be examined in turn below.

II. STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. After having considered the record in this matter, the Court finds that no response is necessary from the United States. Further, the Court finds that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

III. DISCUSSION

A. Ineffective assistance of counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the effective assistance of counsel to assist in his defense. U.S. Const. amend. VI. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance. . ." Id. at 689. A petitioner seeking post-conviction relief based on ineffective assistance of bears a "heavy burden in overcoming this presumption." Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id. A "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

The test for ineffective assistance of appellate counsel is the same as it is for trial counsel. Specifically, "[i]n order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally

9

demonstrate (1) that his counsel's representation fell below an objective standard of reasonableness in light of the prevailing professional norms, and (2) that there is a reasonably probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (internal quotations and citations omitted). Appellate counsel "is entitled to a presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993); see also Smith v. Robbins, 528 U.S. 259, 288 (2000) (appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.") (citing Jones v. Barnes, 463 U.S. 745 (1983)).

    1.  Constructive amendment

Petitioner first argues that his trial and appellate counsel were ineffective in failing to argue that this Court erred in instructing the jury on a charge of distribution when the indictment only charged a drug conspiracy. (3:13-cv-00458, Doc. No. 1: Motion to Vacate at 4).

The Grand Jury Clause of the Fifth Amendment provides, as relevant here, that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. U.S. Const. amend. V. "'To constitute a constructive amendment,' the incongruity must in fact 'change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment." United States v. Whitfield, 695 F.3d 288, 309 (4th Cir. 2012), cert. denied, 133 S. Ct. 1461 (2013) (quoting United States v. Ashley, 606 F.3d 135, 141

(4th Cir. 2010)).

Here, Petitioner was charged with both conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count One); and attempting to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846 and aiding and abetting the same, in violation of 18 U.S.C. § 2 (Count Three). Section 846 provides that "[a]ny person that <u>attempts</u> or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the <u>attempt</u> or conspiracy." (emphasis added).

As the evidence at trial established, Petitioner contacted Harrison in an effort to purchase one kilogram of cocaine for $30,000 on or about June 1. Petitioner arrived at the agreed upon meeting place – Burger King – but his effort to purchase the cocaine failed because Harrison had been unable to reach his drug supplier, Moices Valencia. Based on this fact, Petitioner agreed with Harrison to establish a new time to meet after Valencia had produced the drugs. What is also established from the evidence, is that directly after the Burger King meeting dissolved, Petitioner and Marvin Mobley were pulled over for an expired tag and $30,500 was discovered in the car in a bag that smelled of cocaine.

Based on the foregoing, the Court finds that the jury was properly charged with both drug conspiracy in Count One based on the evidence of Petitioner's participation in the drug conspiracy since 2003 or 2004 up until 2009, and that the June 1 transaction was properly charged as an attempt to possess with intent to distribute cocaine in Count Three.

Accordingly, because the Court finds that the jury instructions were proper, there was no constructive amendment to challenge, and Petitioner's claims of ineffective assistance of counsel must fail.

2. Prejudicial joinder

Petitioner next argues that his counsel was ineffective for failing to challenge the joinder of Counts One and Three for trial. (Motion to Vacate at 5). It is well-settled that a defendant may properly be charged through the same indictment with more than one offense if the offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a).

In general, "[j]oinder is highly favored in conspiracy cases, over and above the general disposition supporting joinder for reasons of efficiency and judicial economy." United States v. Dinkins, 691 F.3d 358, 367-68 (4th Cir. 2012) (internal citations omitted). However, Rule 14(a) provides the Court with discretion to sever the trial of offenses if failure to do so "appears to prejudice a defendant . . ." Fed. R. Crim. P. 14(a). The Circuit Court has held that a defendant may show a right to relief if "requiring him to defend against the joined offenses in the same trial resulted in 'clear prejudice.'" United States v. Cardwell, 433 F.3d 378, 388 (4th Cir. 2005) (quoting United States v. Acker, 52 F.3d 509, 514 (4th Cir. 1995)). Although, "[t]he fact that a separate trial might offer a better chance of acquittal is not a sufficient ground for severance." United States v. Goldman, 750 F.2d 1221, 1225 (4th Cir. 1984) (internal citation omitted).

Other than blankly asserting that the trial of Counts One and Three should have

been contested in separate trials, Petitioner offers no discernible reason why his counsel was ineffective in failing to present this meritless challenge before this Court or on appeal. The evidence presented regarding these counts clearly relates to a common scheme or plan to possess and distribute cocaine. Because the Court finds that the charges were properly joined for trial, this claim will be dismissed.

3. Confidential informant

Petitioner contends that his trial and appellate counsel were ineffective in failing to challenge the use of testimony of a confidential informant to prove the conspiracy charge. (Motion to Vacate at 7). Specifically, Petitioner contends that Harrison's testimony regarding the buy that he arranged with Petitioner for June 1, 2009, and after Harrison was already serving as an informant, could not be used to prove the conspiracy because "one cannot conspire with a confidential informant or agent." (Id.).

Respondent concedes that a government agent, such as Harrison who was actively assisting the Government in its investigation into the drug activity, cannot be a co-conspirator. (3:13-cv-00458, Doc. No. 11: Response in Opposition at 12) (citing United States v. Chase, 372 F.2d 453, 459 (4th Cir. 1967) ("[I]t is equally well-established that one who acts as a government agent and enters into the purported conspiracy in the secret role of an informer cannot be a co-conspirator.") (citing Sears v. United States, 343 F.2d 129 (5th Cir. 1965)).

However, in the present case there was ample evidence linking Petitioner to the drug conspiracy and attempt charge that included coconspirators other than Harrison, including coconspirators that had not yet assumed the role of a government agent. For

13

example, Kenneth Patterson provided evidence that he participated in the conspiracy with Petitioner as far back as 2003 and continuing into 2009. Harrison's testimony, and those of surveillance officers showed the Petitioner acting in concert with his son. Based on clear evidence of Petitioner's involvement in conspiratorial drug activity with people other than Harrison, the Court finds that the present claim is without merit.

4. Voice recognition

Petitioner raises another claim of ineffective assistance of trial counsel, this time contending that his counsel should have challenged the testimony of ICE Agent James Bryant who testified that he recognized Petitioner's voice from tape recorded phone calls that he made while investigating the case. Petitioner claims this testimony was inadmissible lay opinion testimony that should have been prohibited under Rule 701 of the Federal Rules of Evidence. (Motion to Vacate at 8).

Rule 701 provides as follows:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701: "Opinion Testimony by Lay Witnesses"

In this context, Rule 701 must be read in conjunction with Rule 901(b)(5) which provides that in order to authenticate a person's voice and admit the testimony into

evidence, the witness's opinion must be "based on hearing the voice at any time under circumstances that connect it with the alleged speaker." Fed. R. Evid. 901(b)(5). No more is required of the witness but that they "have the requisite familiarity with the speaker's voice." United States v. Robinson, 707 F.2d 811, 814 (4th Cir. 1983).

During trial, and indeed at Petitioner's detention hearing discussed above, Agent Bryant evidenced a clear familiarity with Petitioner's voice through his long-time investigation of Petitioner's involvement in the drug conspiracy. For instance, Agent Bryant testified that he supervised and recorded multiple phone calls from Harrison and Petitioner and that based on those phone calls, he was familiar with Petitioner's voice. The Government also introduced transcripts of the recorded calls which Agent Bryant identified as accurate representations of the voice recordings. One set of the recordings involved the call between Harrison and Petitioner to set up the purchase of the kilogram of cocaine for $30,000 that was set to take place on June 1, 2009. (3:09-cr-00189, Doc. No. 150: Trial Tr. at 43-51).

In sum, Agent Bryant's testimony was sufficient to support his lay opinion that the voice on the tape recorded phone calls was that of Petitioner.

### 5. Guilty plea

Petitioner next contends that his trial counsel was ineffective when informing him that he only faced a mandatory minimum term of imprisonment of 20-years based on the 1991 South Carolina conviction. Petitioner maintains that had he known he would face a mandatory term of life imprisonment, then he would have pleaded guilty rather than face trial. (Motion to Vacate at 9).

The Supreme Court has expressly recognized that a defendant has the right to "effective counsel during plea negotiations." Missouri v. Frye, 132 S. Ct. 1399, 1407-08 (2012); Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) ("Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."). The "two-part Strickland v. Washington test applies to guilty pleas based on ineffective assistance of counsel." Lafler, supra (quoting Hill v. Lockhart, 474 U.S. 52, 58 (1985)). In order to demonstrate a right to relief under Strickland in the context of plea negotiations, a petitioner still must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Lafler, supra, at 1384 (quoting Strickland, 466 U.S. at 694)).

As detailed above, Petitioner was informed in the plea agreement that he faced a mandatory term of life imprisonment if he was convicted and he had two prior drug convictions. Importantly, Petitioner signed this plea agreement evidencing his understanding that he faced the possibility of a mandatory life term of imprisonment if he chose to forego entry of the plea agreement and contest the charges at trial. (3:10-cr-00189, Doc. No. 64: Plea Agreement ¶¶ 4, 28) ("If by the date the defendant pleads guilty, the United States has filed notice of two or more prior felony drug convictions, the statutory penalty shall be life imprisonment . . ."). Petitioner cannot reasonably contend that he did not understand the contents of the plea agreement. Moreover, as counsel noted at sentencing, he explained to Petitioner the effect of two prior convictions—life imprisonment—when discussing the terms of the plea agreement and counsel informed the Court that he explained to Petitioner that he faced mandatory life after he rejected the

16

plea agreement and the Government filed the amended § 851 notice which detailed the two drug convictions. (3:09-cr-00189, Doc. No. 155: Sentencing Tr. at 2-4, 10).

Nor does Petitioner argue that he was unaware of the 1991 possession with intent to sell and deliver cocaine that he sustained in Mecklenburg County Superior Court, nor could he as the Superior Court entered judgment in that case nearly two months before he was convicted in Pickens County, South Carolina, on the trafficking in marijuana charge in December, 1991.

Petitioner was given every opportunity to plead guilty pursuant to the terms of the written plea agreement and ensure that he faced no less than 10 years nor more than life imprisonment, but as the record makes plain in this case, Petitioner chose instead to proceed with his mistaken belief that the UCC could provide a defense at trial, which is a belief that his counsel repeatedly tried to cure him of, but Petitioner flatly rejected counsel's advice.

As Petitioner concedes in his affidavit, his counsel informed him that that terms of the Government's offer in the plea agreement required that he participate in the ongoing prosecution which Petitioner acknowledges meant that he may have to testify against his son at trial. Petitioner also concedes that his counsel informed that he faced 20 years to life based on the prior conviction; however, Petitioner could have avoided the 20-year minimum term by accepting the Government's plea agreement because with his cooperation, the § 851 notice containing the 1991 South Carolina conviction would have been withdrawn.

Based on the foregoing, the Court finds that Petitioner's argument is without

17

merit.

B. Prosecutorial misconduct

In his final claim which Petitioner included in a motion to amend his petition, Petitioner argues that his trial counsel was ineffective in not objecting to prosecutorial misconduct. Specifically, Petitioner argues that the Government harassed potential defense witnesses; suppressed evidence favorable to the defense; made deals with witnesses in exchange for false testimony; and provided certain criminals favorable "treatment while in and out of jail." (3:13-cv-00458, Doc. No. 3: Motion to Amend).

To establish prosecutorial misconduct, a defendant must demonstrate: (1) that the conduct of the prosecutor was improper, and (2) that the improper conduct prejudicially affected his substantial rights so as to deprive him of a fair trial. See United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993).

Petitioner's arguments are merely conclusory and do not alert this Court to any potential prejudice, either from the actions or omissions of the prosecution or his trial counsel. Lastly, Petitioner's effort to challenge the quantity of the cocaine that was attributable to him by trying to cast some of the cocaine into another conspiracy must fail as it is merely an unadorned effort to attack the credibility of the witnesses and the strength of the evidence against him. And as the Fourth Circuit concluded in his direct appeal, the jury found the amount of drugs for which Petitioner was responsible following the instructions of this Court which directed the jury to determine the amount of drugs reasonably foreseeable to Petitioner and Marvin Mobley on an individual basis. See Mobley, 482 F. App'x at 768.

IV. CONCLUSION

For the reasons discussed herein, the Court finds that Petitioner's § 2255 Motion to Vacate, as amended, is without merit and it will be dismissed.

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion to Amend is **GRANTED**. (Doc. No. 3).

**IT IS FURTHER ORDERED** that Petitioner's Section 2255 Motion to Vacate, as amended, is **DENIED** and **DISMISSED with prejudice**. (Doc. Nos. 1, 3).

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk of Court is respectfully directed to close this civil case.

**SO ORDERED.**

Signed: September 7, 2016

Robert J. Conrad, Jr.
United States District Judge